IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| SARAH GALANTE ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | No. |
| ) | |
| RED JACKET MOUNTAIN VIEW, LLC ) | |
| D/B/A RED JACKET MOUNTAIN ) | |
| VIEW RESORT (RED JACKET) ) | |
| AND ) | |
| DAVENPORT COMPANIES ) | |
| AKA DAVENPORT REALTY TRUST ) | |
| ) | |
| Defendant ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Sarah Galante, by and through her undersigned counsel, Parnell, Michels & McKay, PLLC, as and for her respective claims against Red Jacket Mountain View, LLC, d/b/a Red Jacket Mountain View Resort, (hereinafter "Red Jacket"), hereby alleges:

## PRELIMINARY STATEMENT

1. This is a civil rights lawsuit brought, primarily, under the Americans with Disabilities Amended Act due to a failure of Red Jacket to provide the promised disability compliant room to Plaintiff, Sarah Galante, and their failure to accommodate her after they failed to provide the disability compliant room.

## JURISDICTION

2. This Court has Federal Question Jurisdiction pursuant to 28 USC § 1331, as this action is based upon two important federal statutes: the Americans with Disabilities Act, Title II, 42 USC § 12131 *et. seq.* and Title III, 42 USC § 12181 *et. seq.*

3. The Plaintiff requests that this Court exercise supplemental jurisdiction over the State Court causes of action named herein as they arise from the common nucleus of operative facts. 28 USC § 1367.

## VENUE

4. Venue is proper in the United States District Court for the District of New Hampshire pursuant to 28 USC §1391(b) and (c) as the Defendant's hotel is based in New Hampshire, Plaintiff is from Massachusetts, and the core nucleus of operative facts occurred within this venue.

## JURY TRIAL DEMANDED

5. Plaintiff demands a trial by jury on each of the causes of action.

## PARTIES

6. Defendant, Red Jacket Hotel, is a New Hampshire corporation, with a principal address of 2251 White Mountain Highway, Conway, County of Carroll, State of New Hampshire, and has a mailing address of 20 North Main Street, South Yarmouth, County of Barnstable, Commonwealth of Massachusetts.  Further, Red Jacket is a "public accommodation" as defined in 42 U.S.C. § 1281(7)(F) and its implementing regulation, 28 C.F.R. § 36.104 because it is a private entity that operates a place of public accommodation, specifically, a hotel of five (5) or more rooms.

7. Defendant, Davenport Companies, also known as the Davenport Realty Trust, based on information and belief, is a company that operates and manages the Red Jacket Hotel. Davenport Realty Trust has a principal address of 20 North Main Street, South Yarmouth, County of Barnstable, Commonwealth of Massachusetts. The Co-Trustees are Stephen N. Aschettino and

Dewitt P. Davenport. The resident agent is Dewitt Davenport of North Main Street, South Yarmouth, County of Barnstable, Commonwealth of Massachusetts.

8. Plaintiff, Sarah Galante, lives at 6 Whitehall Street, Dedham, County of Norfolk, Commonwealth of Massachusetts. Mrs. Galante is an individual with a disability within the meaning of ADA, 42 U.S.C. § 12102(1) and its implementing regulation at 28 C.F.R. Part 36 as Mrs. Galante suffers from Multiple Sclerosis (MS) and related ailments.

## FACTS

9. Red Jacket Hotel is a resort and hotel located in Conway, New Hampshire, and provides hotel services and accommodations in New Hampshire. It also features an indoor water park.

10. Sarah Galante is a long-time sufferer of Multiple Sclerosis (MS) and at the time of this incident required a wheelchair to ambulate, in addition to assistive devices in order to use the bathroom.

11. Red Jacket Hotel specifically advertises on their website, www.redjacketresorts.com, that they provide accessible services to the disabled. The website states that Red Jacket "offers guests with disabilities several options to make their stay more enjoyable, including… access ramps, grab bars and chairs in showers… and raised toilets". (https://redjacketresorts.com/resorts/red-jacket-beach-resort/accommodations/accessible-rooms).

12. Red Jacket also has an "Accessibility Statement" on their website as it relates to disabled persons: "Red Jacket Resorts strives to ensure that its services are accessible to people with disabilities, and continues its efforts to constantly improve the accessibility of its site and services to allow seamless, accessible and unhindered use by people with disabilities". (https://redjacketresorts.com/accessibility-statement).

13. The statement goes on to state that "Our resorts include a selection of accessible rooms and common areas with features that vary by property and include wheelchair access, first-floor rooms, roll-in showers, grab bars, access ramps, handheld shower heads, and accessible parking".

14. Both the accessibility statement and accessible rooms page provide a phone number of 1-800-227-3263 to book an "accessible" room, and the accessibility statement provides an email link of [reservations@redjacketresorts.com](mailto:reservations@redjacketresorts.com).

## STATEMENT OF FACTS

15. Sarah Galante, her husband Michael, and her son Nathaniel live in Dedham, Massachusetts.

16. Due to her MS, Mrs. Galante is very limited in her ability to move and ambulate around large areas, and especially smaller cramped areas.

17. The Galante family still wanted to do something fun for their son, Nathaniel, who was seven (7) years old at the time.

18. Red Jacket Resort is a hotel that advertises they provide accessible rooms for the disabled. They also have an indoor water park called "Kahuna Laguna".

19. The Galante family decided that a vacation in early July would be best as Nathaniel would be out of school, and the July 4th festivities in North Conway are well known.

20. Sarah Galante knew that rooms that are compliant with the ADA were often hard to come by, and sought to secure a reservation a few months in advance in order to get an appropriately safe room for her to stay in.

21. On or about April 24, 2018, Mrs. Galante called the Red Jacket to inquire about renting a room for the July 4th holiday coming up in a few months.

22. Mrs. Galante repeatedly noted to the Red Jacket representative on the phone that she was severely disabled with MS, and required an ADA compliant room.

23. She spoke with a male, and informed him that she needed to have a first floor room that was close to the entrance of the hotel as she had significant difficulties ambulating through large spaces.

24. Mrs. Galante also specifically asked for a room that had a handicap accessible restroom, shower, and grab bars in and around the bathroom.

25. The Red Jacket representative repeatedly advised Mrs. Galante that they had such a room, and could easily accommodate her.

26. Relying on this representation, Sarah Galante booked four (4) nights for herself, husband and son. This included full day water passes for her son and husband to have fun at the Kahuna Laguna water park.

27. In response, Mrs. Galante received an email from Red Jacket. The email was titled "Reservation Confirmation", and states in pertinent part: "We appreciate you booking *directly* with us thereby assuring you of the best rates, availability, and guest service". (emphasis added)

28. The cost of this stay was $1,182.80.

29. At the time, the Galante family was very excited as their son Nathaniel does not always get to have the same fun as other children due to his mother's limitations.

30. Mrs. Galante is very keenly aware of this, and strives daily to not let her disability affect her son and his enjoyment of life.

31. The booking required the Galantes to check in on July 4, 2018, and check out on July 8, 2018.

32. On July 4, 2018, the Galantes made the long drive from Dedham, Massachusetts to Conway, New Hampshire.

33. When they arrived, the front desk did not immediately inform them they did not provide an ADA Compliant room. Instead, the Galantes learned the room was non-compliant when the ADA when they opened the door to the room and found out it was not ADA compliant.

34. The room was not near the entrance, and required more significant travel for Mrs. Galante to access the room.

35. The room was situated in such a way that the bathroom essentially had two parts. The first was the initial part of the room, which was accessible via a wheelchair and provided access to a sink and vanity mirror. The second part of the bathroom included both the shower and toilet, and had a narrow opening that made it very difficult to access via a wheelchair.

36. Neither portion of the bathroom had grab bars or handrails present.

37. The second portion of the bathroom did not contain a roll-in shower, nor did it have any counterspace whatsoever for a disabled person to steady themselves on.

38. The bathroom toilet also did not have a raised toilet.

39. Mrs. Galante informed the manager that the room was not what they contracted for, and the manager stated that the issue was with "third party websites", despite Mrs. Galante's confirmation that she had booked directly with Red Jacket.

40. Mrs. Galante asked for an ADA compliant room, and Red Jacket refused to provide one.

41. Faced with driving many hours home, and crushing the excitement of her 7 year old son, Mrs. Galante did what any good and kind mother would do, and decided to stay so her son could enjoy himself.

42. Mrs. Galante then asked for any reasonable accommodation the hotel could provide, including making the bathroom safer for her to use.

43. In response, Red Jacket provided a temporary raised toilet seat for her to use on the toilet. Based on information and belief, they provided no other reasonable accommodation.

44. As their stay began, Mrs. Galante started having issues with the travel from the entrance of the hotel to their room. Her husband would push her down the hallways, and her son would "lead the way" by clearing the hallways and opening the separate doors necessary to get to their room.

45. Mrs. Galante was very unstable on her feet as is common with severe MS patients. Due to this, Mrs. Galante was terrified of using a shower that was not accessible via wheelchair, had no grab bars, and created a substantially dangerous environment for her.

46. Again, instead of packing up, Mrs. Galante decided not to shower at all during her time staying at Red Jacket due to concerns the bathroom was unsafe for showering as a woman suffering from severe MS.

47. Mrs. Galante did her best to put a smile on for her son, and tried hard to enjoy the time with her son despite Red Jacket's refusal to honor their agreement.

48. On July 7, 2018, Mrs. Galante and her family were at the pool. Mrs. Galante had to go the bathroom, and returned to her room.

49. When she returned to her room, staff of Red Jacket had removed the raised toilet and place it in the shower stall. Based on information and belief, housekeeping was responsible for removing the raised toilet.

50. Mrs. Galante went into the bathroom to relieve herself.

51. As she was getting up to leave the bathroom, she encountered a wet floor. With no handrails, no counterspace, or anything whatsoever in the room to steady herself, Mrs. Galante lost her balance and fell hard to the floor.

52. Mrs. Galante sustained a fractured ankle as a result of her fall.

53. Instead of providing an ADA compliant room with handrails, grab bars, or anything else, Red Jacket just stuck the Galantes in any room they could find without any regard for her disability or safety.

54. Mrs. Galante has suffered permanent, serious and debilitating injuries as a result of her fall.

55. Mrs. Galante has suffered pain and suffering, including emotional damages, as a result of her injuries and the Red Jacket's failure to provide an ADA complaint room.

56. As a direct and proximate cause of the actions or inactions of the Defendants, Mrs. Galante has suffered significant and ongoing damages.

## FEDERAL CLAIMS

### COUNT I

### DEFENDANT RED JACKET VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT

57. Plaintiff re-alleges and incorporates by reference the allegations of facts contained in every preceding paragraph.

58. Plaintiff is substantially limited in the major life activities of ambulation, walking and movement. Accordingly, she is considered an individual with a disability as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(2).

59. Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(A). Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

60. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot shall not discriminate on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

61. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.303(b)(1).

62. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, a public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 28 C.F.R. § 36.302(a).

63. Pursuant to Title III of the ADA and its implementing regulations, "a public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party:

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

    (v)    Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others." 28 C.F.R. § 36.303(a)(1)(iv).

64. Defendant discriminated against the individual Plaintiff on the basis of her disabilities by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from Defendant's hotel and lodging services in violation of 42 U.S.C. §§ 12181, et seq.

65. As a proximate result of Defendant's discrimination, actions and inactions, Plaintiff suffered harm as set out above. Defendant violated the ADA proximately causing harm to this Plaintiff.

66. As a proximate result of Defendant's discrimination, actions and inactions, Plaintiff suffered harm as set out above.

## STATE LAW CLAIMS

## COUNT IV

### DEFENDANT RED JACKET VIOLATED NEW HAMPSHIRE HUMAN RIGHTS LAW, RSA354-A, AS TO THE PLAINTIFF

67. Plaintiff re-allege and incorporate by reference the allegations of facts contained in every preceding paragraph.

68. Plaintiff is a person with a disability as defined by New Hampshire RSA 354-A.

69. Defendant owns, leases, or operates a place of public accommodation as defined under New Hampshire RSA 354-A.

70. New Hampshire RSA 354-A:16 provides that "The opportunity for every individual to have equal access to places of public accommodation without discrimination because of age, sex, gender identity, race, creed, color, marital status, physical or mental disability or national origin is hereby recognized and declared to be a civil right."

Case 1:21-cv-00554-PB   Document 1   Filed 06/25/21   Page 11 of 13

71.     Further, New Hampshire RSA 354-A:17 states, "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the age, sex, gender identity, race, creed, color, marital status, physical or mental disability or national origin of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof; or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of age, sex, gender identity, race, creed, color, marital status, physical or mental disability or national origin; or that the patronage or custom threat of any person belonging to or purporting to be of any particular age, sex, gender identity, race, creed, color, marital status, physical or mental disability or national origin is unwelcome, objectionable or acceptable, desired or solicited.

72.     Defendant discriminated against the Plaintiff as set out above by denying her equal access to the services, programs, and benefits by refusing to provide a reasonable accommodation in violation of NewHampshire RSA 354-A:17. It is likely that the discrimination will recur.

73.     As a proximate result of Defendant's discrimination, actions and inactions, Plaintiff suffered harm as set out above.

### COUNT V
### DEFENDANT, RED JACKET, VIOLATED NEW HAMPSHIRE CONSUMER PROTECTIONLAW, RSA 358-A, AS TO THE PLAINTIFF

74.     Plaintiff re-alleges and incorporate by reference the allegations of facts contained in every preceding paragraph.

75.     Defendant Red Jacket is, and was at all relevant times, engaged in commerce in New Hampshire as defined by New Hampshire RSA 358-A in that it provides hotel and lodging

services inexchange for payment.

76.    Plaintiff was a consumer of Defendant's hotel and lodging services.

77.    On its website, Red Jacket advertises itself as a hotel "Red Jacket Resorts strives to ensure that its services are accessible to people with disabilities, and continues its efforts to constantly improve the accessibility of its site and services to allow seamless, accessible and unhindered use by people with disabilities."

78.    As alleged throughout this complaint, this promotional material is false.

79.    Defendant made these misrepresentations about access and use of the lodging and hotel facilities knowingly and willingly thus they constitute deceptive, unfair and false acts or practices in trade or commerce.

80.    As a proximate result of the false promotion of services and general violation of the New Hampshire Consumer Protection Act, Plaintiff suffered harm as set out above.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court grant the following relief against theDefendants:

- A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act;
- B.    Schedule a trial by jury;
- C.    Enter a judgment in favor of Plaintiff awarding any and all relief available under law to the maximum extent allowed by common law, state and federal statutes, and the Constitutions of New Hampshire and the United States of America, including but not limited to the following:
    - 1.    Compensatory damages;

      2.     Treble damages pursuant to NH RSA 358-A:10;

      3.     Enhanced Compensatory damages;

      4.     Punitive damages;

      5.     Reasonable costs, interest and attorneys' fees; and,

D.   Award any and all other relief that may be just, necessary and appropriate.

Respectfully submitted,
Sarah Galante
By her attorneys,
PARNELL, MICHELS, & MCKAY, PLLC.

Dated:  June 24, 2021               By:*/s/* Rory J. Parnell (#20666)
25 Nashua Road, Suite C5
Londonderry, NH 03053
(603) 434-6331
rparnell@pmmlawyers.com